**FILED**

APR 15 2026

CLERK, U.S. DISTRICT COURT
TEXAS EASTERN



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| SUSHIL MANOJKUMAR PATEL (01) | § | |
| DEVANSH JIGNESH BHAVSAR (02) | § | |
| AKSHAI LOKRAY (03) | § | |
| NAREN KUKKAPALLI (04) | § | |
| MUTHUKRISHNAN PALRAJ (05) | § | |
| RAVI CHANDA REDDY AMANAGANTI (06) | § | |
| ██████████████████ | § | |
| SHABBIR ALI MOHAMMED (08) | § | |
| VENKATAPAVAN PACHCHAVA (09) | § | Case No. 6:25-CR-118 |
| JAY SURESHKUMAR RAKHOLIYA (10) | § | JUDGES BARKER / LOVE |
| NAGA RAJU TEEGALA (11) | § | SEALED |
| PRUTHWIK GOUD GALLIPALLY (12) | § | |
| SHUBHAM PATEL (13) | § | |
| ██████████████ | § | |
| HARISH CHARY VADLA (15) | § | |
| ██████████████ | § | |
| SMITABEN THAKOR (17) | § | |
| SAMIRALI GHABRANI (18) | § | |
| IQBAL LAKHANI (19) | § | |
| MUDASSIR LAKHANI (20) | § | |
| ZOHAIB MUHAMMAD (21) | § | |
| SAMIR ALI (22) | § | |

## FOURTH SUPERSEDING INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

1.      Defendant 1, **Sushil Manojkumar Patel**, was a resident of the Republic of

India, present in the United States of America on a tourist visa.

Fourth Superseding Indictment – Page 1

2. Defendant 2, **Devansh Jignesh Bhavsar** was a resident of the Republic of India, present in the United States of America on a student visa.

3. Defendant 3, **Akshai Lokray** was a resident of the Republic of India, present in the United States of America on a student visa.

4. Defendant 4, **Naren Kukkapalli** was a resident of the Republic of India, present in the United States of America on a student visa.

5. Defendant 5, **Muthukrishnan Palraj** was a resident of the Republic of India, present in the United States of America on a work permit.

6. Defendant 6, **Ravi Chandra Reddy Amanaganti** was a resident of the Republic of India, present in the United States of America on a student visa.

7. Defendant ████████████████████ as a resident of the Republic of India, present in the United States of America on a student visa.

8. Defendant 8, **Shabbir Ali Mohammed** was resident of the Republic of India, present in the United States of America on a student visa.

9. Defendant 9, **Venkatapavan Pachchava** was resident of the Republic of India, present in the United States of America on a student visa.

10. Defendant 10, **Jay Sureshkumar Rakholiya** was resident of the Republic of India, present in the United States of America on a student visa.

11. Defendant 11, **Naga Raju Teegala** was resident of the Republic of India, present in the United States of America on a student visa.

12. Defendant 12, **Pruthwik Goud Gallipally** was resident of the Republic of India, present in the United States of America on a student visa.

13. Defendant 13, **Shubham Patel** was resident of the Republic of India, present in the United States of America on a student visa.

14. Defendant 14 ████████████ was resident of the Republic of India, present in the United States of America on a student visa.

15. Defendant 15, **Harish Chary Vadla** was resident of the Republic of India, present in the United States of America on a student visa.

16. Defendant 16 ████████████ was resident of the Republic of India, present in the United States of America on a student visa.

17. Defendant 17, **Smitaben Thakor** was a resident of the Southern District of Texas.

18. Defendant 18, **Samirali Ghabrani** was a national of the Republic of India, residing in the United States of America, within the Southern District if Texas.

19. Defendant 19, **Iqbal Lakhani** was a resident of Fort Bend County, Texas, within the Southern District of Texas.

20. Defendant 20, **Mudassir Lakhani** was a resident of Fort Bend County, Texas within the Southern District of Texas.

21. Defendant 21, **Zohaib Muhammad** was national of Pakistan, residing within the Southern District of Texas.

22. Defendant 22, **Samir Ali** was a resident of Harris County, Texas, within the Southern District of Texas.

23. Zo Frost and Co. Custom Jewelry is a business located in Harris County, Texas within the Southern District of Texas. The business is owned and operated jointly by Defendants 21 and 22.

24. "Varun" aka "Vikram" is an unidentified co-conspirator who orchestrated gold pick ups in the United States of America. The exact identity of the mediator is unknow at the time of this indictment.

25. "Darron" aka "Chuck Brown" is an unidentified co-conspirator who orchestrated gold pick-ups in the United States of America.

## Count One

Violation: 18 U.S.C. § 1349
(Conspiracy to Commit Wire Fraud)

1. The General Allegations section of the indictment is realleged and incorporated as though fully set forth herein.

2. From on or about February 1, 2025, and continuing through on or about February 4, 2026, the exact dates being unknown to the Grand Jury, in Smith County, Texas, within the Eastern District of Texas, and elsewhere,

**SUSHIL MANOJKUMAR PATEL (1)**
**DEVANSH JIGNESH BHAVSAR (2)**
**AKSHAI LOKRAY (3)**
**NAREN KUKKAPALLI (4)**
**MUTHUKRISHNAN PALRAJ (5)**
**RAVI CHANDA REDDY AMANAGANTI (6)**
**█████████████████ (7)**
**SHABBIR ALI MOHAMMED (8)**
**VENKATAPAVAN PACHCHAVA (9)**
**JAY SURESHKUMAR RAKHOLIYA (10)**
**NAGA RAJU TEEGALA (11)**
**PRUTHWIK GOUD GALLIPALLY (12)**

Fourth Superseding Indictment – Page 4

**SHUBHAM PATEL (13)**
███████████ **(14)**
**HARISH CHARY VADLA (15)**
███████████ **(16)**
**SMITABEN THAKOR (17)**
**SAMIRALI GHABRANI (18)**
**IQBAL LAKHANI (19)**
**MUDASSIR LAKHANI (20)**
**ZOHAIB MUHAMMAD (21)**
**SAMIR ALI (22)**

along with others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree to violate 18 U.S.C. § 1343, wire fraud; that is, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce any writings, signs, signals, pictures, and sounds for the purpose of executing a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises.

**Object and Purpose of the Conspiracy**

3. The objective of the conspiracy was for defendants and their co-conspirators to unlawfully and unjustly enrich themselves by defrauding victims by means of false and fraudulent pretenses, representations, and promises:

**Manner and Means of the Conspiracy**

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. THE CALL CENTERS: Conspirators situated in the Republic of India acted as the front-line fraudsters. They operated "call centers" that initiate the fraud via wire

communications. Specifically, the call centers placed phone calls, send emails, or direct online "pop-up" windows to a victim – typically targeting the elderly – and represented themselves as federal agents, a bank fraud department, or large companies such as Amazon or PayPal. Once they identified a potential victim, they handed the case over to a fraud specialist – the "Closer" – who targeted the fraud specifically to the victim.

5.      THE CLOSER: Closers initiated personal contact with the victim and engaged in highly personalized fraud. Over time, the victims were tricked into believing that they were under federal investigation. Not only did the Closers tell them this, but they also provided the victims with forged and fraudulent documents, purporting to be, for example, federal indictments or official press releases. Ultimately, the victim was convinced to post a monetary bond to avoid being arrested.

In other versions, the victim was tricked into believing that they are at risk of federal prosecution due to a mistake done by themselves, or that certain actions are necessary to protect their assets from fraudulent activity.

In most cases, the victims were then instructed that the bond, asset transfer, or other type of payment, had to be posted in gold or cash and were provided specific instructions on how to conduct the transfer to an undercover agent/employee. The victims were also frequently directed to make an initial transaction via Bitcoin ATM.

6.      MEDIATORS. After the Closer had convinced the victim to "post bond" or otherwise transfer their assets, a Mediator, also referred to as a "processor," was enlisted. Their role was to facilitate the transfer of gold to a Courier. This was done by offering the job to a network of Couriers, one of whom would act as the undercover agent to pick up

the gold or cash from the victim. Both the victim and the Courier knew a specific password to verify the transaction.

Upon exchange of the password, the Courier obtained possession of the gold or currency, and the Mediator instructed the Courier where to go and deliver the gold to a Collector who would handle the last part of the scheme. The mediator would oversee and verify that the gold or cash was passed along to the Collector from the Courier.

7.      THE COURIERS: The Courier's role was to pick up the gold or cash from the victims. The mediators would offer a pick-up to the network of Couriers, and one of them would get the job – typically the Courier who was closest geographically to the pick-up location.  From there, the Courier got instructions directly from the mediator, who was also in contact with the Closer. Utilizing a unique password or token, the Courier would obtain the gold or cash from the victim. Next, the Courier was instructed on where to meet the Collector, who would take possession of the gold or cash and pay the Courier for his services. A "token," usually a $1 bill, was often exchanged for the gold or cash, as both a form of identity verification, and as a receipt for the pick-up. A Courier has been known to organize his own subset of Couriers, thereby extending the geographical pick-up area he could cover.

8.      The COLLECTORS: Collectors – sometimes referred to as "Token Guys" – were tasked with obtaining gold and cash from the Courier and getting the gold or cash to its ultimate location. The Collector was also responsible for paying the Courier his share of the fraudulently obtained proceeds. After receiving gold or cash, the Collectors would launder and move the funds through his network, often utilizing businesses to export the

Fourth Superseding Indictment – Page 7

illegally obtained gold out of the United States, ultimately placing the funds into the Hawala network, from where it was distributed to others as proceeds of the unlawful activity.

9. THE HAWALA NETWORK: Hawala is an ancient method of money transfer originating in South Asia. In essence, the network operated as an underground banking system that enables the movement of funds without physical transfer of currency. The network relied on trust and operated outside traditional banking systems.

## Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy and to achieve its objectives and purpose, the following acts, among others, were committed in the Eastern District of Texas and elsewhere:

## The scheme targeting Victim J.C.

10. Victim J.C., an elderly individual residing in Rusk County, Texas, in the Eastern District of Texas, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of the Drug Enforcement Administration (DEA). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim J.C. was convinced to post a $157,550 bond, to be paid in gold bullion. He was then instructed where to meet with an undercover agent to transfer the gold. In reality, the undercover agent was **Sushil Manojakumar Patel**, who knew that Victim J.C. was being defrauded. The Mediator for this transaction was Varun" aka "Vikram".

Fourth Superseding Indictment – Page 8

In furtherance of the conspiracy, **Sushil Manojakumar Patel** took several steps all within the Eastern District of Texas: (1) he personally contacted the Mediator, from whom he received his instructions; (2) he met with Victim J.C. at the agreed location in Tyler, Smith County, Texas; (3) he provided the agreed password to Victim J.C. and affirmed that he was "with the DEA"; and (4) he took physical possession of the gold bullion.

### The scheme targeting Victim J.M.

11.     Victim J.M., an elderly individual residing in Dallas County, Texas, in the Northern District of Texas, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as representatives of the large financial companies PayPal and Bank of America. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim J.M. was convinced to transfer over one million dollars of his elderly mother's funds. A portion of the funds were transferred via a bitcoin ATM, while the majority were paid in gold bullion. Victim J.M. met with a Courier on four occasions to transfer the gold. The Courier in each case was **Sushil Manojakumar Patel**, who knew that Victim J.M. was being defrauded. The Mediators for these transactions were "Varun" aka "Vikram" and "Darron" aka "Chuck Brown".

### The scheme targeting Victim T.B.

12.     Victim T.B., an elderly individual residing in Livingston Parish, Louisiana, in the Middle District of Louisiana, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the

conspirators represented themselves as agents of the Federal Trade Commission and The Department of Treasury. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim T.B. was convinced to transfer her retirement savings, totaling over $300,000, to be paid in gold bullion. T.B. transferred the gold to a Courier, **Sushil Manojakumar Patel**, who knew that Victim T.B. was being defrauded. The Mediator for this transaction was "Darron" aka "Chuck Brown."

<u>The scheme targeting Victim D.W.</u>

13. Victim D.W., an elderly individual residing in Franklin County, Texas, in the Eastern District of Texas, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of the Federal Trade Commission. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim D.W. was convinced to empty her bank accounts and transfer the cash to an agent. T.B. met with Couriers posing as federal agents on multiple occasions. On one occasion, the Courier was **Sushil Manojakumar Patel**, who knew that Victim T.B. was being defrauded, and on another occasion, the Courier was **Muthukrishnan Palraj**, who also knew that Victim T.B. was being defrauded. The Mediator for this transaction was "Varun" aka "Vikram."

<u>The scheme targeting Victim C.W.</u>

14. Victim C.W., an elderly individual residing in Gregg County, Texas, in the Eastern District of Texas, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators

represented themselves as representatives of Texas Bank & Trust Fraud Department. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim C.W. was convinced to transfer over one million dollars to the fraud conspiracy. A portion of the funds were transferred via a bitcoin ATM, while the majority was paid in gold bullion. C.W. transferred gold to Couriers on several occasions. On one occasion, the Courier was **Muthukrishnan Palraj**, who knew that Victim C.W. was being defrauded, and on another occasion, the Courier was **Ravi Chandra Reddy Amanaganti**, who also knew that C.W. was being defrauded.

<u>The scheme targeting Victim R.R.</u>

15.     Victim R.R., an elderly individual residing in Tom Green County, Texas, in the Western District of Texas, and his wife were targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves agents of the Federal Trade Commission (FTC). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim R.R. was convinced that his social security number had been compromised and that he needed to convert his financial assets to gold, and transfer it to the United States Treasury until the compromise could be addressed. T.B. met with Couriers posing as FTC agents on multiple occasions and transferred approximately $900,000 worth of gold. On one occasion, the Courier was **Muthukrishnan Palraj**, who knew that Victim R.R. was being defrauded, and on another occasion, the Courier was ████████████████████████████ o also knew that Victim R.R. was being defrauded.

## The scheme targeting Victim N.P.

16.     Victim N.P., an elderly individual residing in Los Angeles County, California, in the Central District of California, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of United States Department of the Treasury. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim N.P. was convinced that accounts had been compromised.  Initially, Victim N.P. was persuaded to transfer $18,000 to a Courier for the conspiracy. Subsequently, Victim N.P. was convinced to make another transfer, this time of $15,000. The Courier who met with N.P. to pick to the $15,000 was **Devansh Jignesh Bhavsar**, who also participated in coordinating the transfer of the money.

## The scheme targeting Victim W.S.

17.     Victim W.S., an elderly individual residing in Hardy County, West Virginia, in the Northern District of West Virginia, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves agents of the Federal Trade Commission (FTC). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim W.S. was convinced that her accounts had been compromised.  Initially, Victim W.S. transferred more than $30,000 to a Courier for the conspiracy. Subsequently, Victim W.S. was persuaded to transfer over $300,000 to a jewelry store in California, for the purchase of gold. When the wiring bank stopped the

transfer due to suspicion of fraud, Courier **Devansh Jignesh Bhavsar**, who knew W.S. was being defrauded, contacted the bank to inquire about the status of the wire, stating that he was supposed to pick up the approximately $300,000 worth of gold from the jewelry store.

## The scheme targeting Victim E.M.

18. Victim E.M., an elderly individual residing in Los Angeles County, California, in the Central District of California, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of the Federal Trade Commission (FTC). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim E.M. was convinced to liquidate her funds, and convert the cash into gold. On two occasions, the conspirators arranged for a Courier to pick up gold from E.M. On one of these occasions, the Courier was **Akshai Lokray**, who received direct instructions about the pick-up from **Sushil Manojakumar Patel**.

## The scheme targeting Victim A.L.

19. Victim A.L., an elderly individual residing in Broward County, Florida, in the Southern District of Florida, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of the Federal Trade Commission (FTC). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim A.L. was convinced to conduct several bitcoin transfers and to

Fourth Superseding Indictment – Page 13

convert large amounts of money to gold. The gold was picked up by Couriers for the conspiracy on several occasions, totaling over $1,000,000 through various transfers. On one of the occasions, the Courier was **Harish Chary Vadla**. On another occasion, the Courier was **Naren Kukkapalli**, who was in contact with and received instructions regarding the pick-up from **Sushil Manojkumar Patel**.

<u>The scheme targeting Victim J.W.</u>

20. Victim J.W. residing in O'Brien County, Iowa, in the Northern District of Iowa, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of Homeland Security, and the Drug Enforcement Administration (DEA). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim J.W. was convinced to withdraw large amounts of cash, then package it in accordance with the "DEA's" instructions, and hand the packages over to a Courier. J.W. handed packages of cash to Couriers for the conspiracy on many occasions, totaling over $1,000,000. Among the Couriers picking up from Victim J.W. on separate dates, were **Ravi Chandra Reddy Amanaganti**, **Shabbir Ali Mohammed**, **Venkatapavan Pachchava**, and **Naga Raju Teegala.**

<u>The scheme targeting Victim P.W</u>

21. Victim P.W., an elderly individual residing in Pulaski County, Missouri, in the Western District of Missouri, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves being from Amazon. After initial conversations about

an alleged fraudulent purchase, P.W. was referred to a person claiming to be with the United States Marshals Service. P.W. was coerced into delivering gold to Couriers on two separate occasions, under the claim that the gold was being legally seized as evidence. One of the Couriers was **Naren Kukkapalli** and the other Courier was **Jay Rakholiya**

### The scheme targeting Victim J.A.

22.     Victim J.A., an elderly individual residing in Saline County, Kansas in the District of Kansas, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves being from a local bank. After initial conversations about an alleged fraudulent purchase, Victim J.A. was referred to a person claiming to be an agent with the United States Treasurer's Office. Victim J.A. was convinced to withdraw large amounts of cash, and ship the cash concealed to other participants in the conspiracy. Subsequently, J.A. received communications from people purporting to be with the Department of Treasury instructing her to withdraw more funds and provide the fund in person to an "agent". J.A. also received a voicemail threatening her life. The Couriers who ultimately showed up to collect the money were **Naga Raju Teegala** and **Pruthwik Goud Gallipally**.

### The scheme targeting Victim N.M.

23.     On or about May 14, 2025, Victim N.M. an elderly individual residing in Petersburg Borough, Alaska, in the District of Alaska, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented being with the government and provided a

purported federal ID number. The victim was transferred to another "agent" who claimed

to be with the Drug Enforcement Administration (DEA). Using fraudulent pretenses,

representations, promises and inherent threats of arrest and legal consequences, Victim

N.M. was convinced to wire an initial sum of money. Subsequently, the victim was told to

withdraw funds to be collected in person. The Couriers picking up the first cash delivery

were ███████████ d Shubham Patel. **Devansh Jignesh Bhavsar** facilitated and

organized the pickup remotely.

The scheme targeting Victim S.G.

24.     On or about May 15, 2025, Victim S.G., and elderly individual residing in

Roane County, Tennessee, in the Central District of Tennessee, was targeted by the Indian

call centers with the fraud scheme. Through wire communications, namely email, internet,

and phone calls, the conspirators represented themselves to be with the Federal Trade

Commission (FTC), and explained that they had a warrant for the victim's arrest. Using

fraudulent pretenses, representations, promises and inherent threats of arrest and legal

consequences, Victim S.G. was convinced to provide her financial assets to the scammers,

utilizing deliveries of both gold, silver, gift cards and cryptocurrency. On one occasion,

the victim provided gold and silver in bars and coins to **Shubham Patel** - a Courier for the

conspiracy.

25.     On or about On October 24, 2025, Victim C.H., an elderly individual

residing in Navajo County, Arizona, within the District of Arizona, was targeted by the

Indian call centers with the fraud scheme. Through wire communications, namely email,

internet, and phone calls, the conspirators represented themselves to be with the United

States Marshals Service and explained that C.H.'s identity had been stolen and that there was an outstanding warrant for his arrest. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim C.H. was convinced to post a bond to avoid arrest. The victim delivered the "bond" amounting to $100,000 compiled of cash, gold and silver to a Courier for the conspiracy. Subsequently, the victim received instructions to withdraw an additional $180,000 and deliver it to courier. The courier that showed up to collect the funds was ███████████████. A mediator linked to ██████ was **Devansh Jignesh Bhavsar**.

<u>The Disposition of the Proceeds via the Hawala Network</u>

26.     According to both **Sushil Manojkumar Patel** and **Devansh Jignesh Bhavsar**, once the gold and/or silver bullion are acquired from a victim and then transferred to the Collector, the bullion is then typically sold for cash, generally via a jewelry store, who knowingly purchases the bullion below the market price. The bullion is then melted down and either re-sold or manufactured into commercial jewelry which is sold on the retail market. At least part of the proceeds obtained by the Collector are then transmitted to the Mediators and Call Center by one or more members of the Hawala Network, with locations across the United States and India.

<u>The scheme targeting J.T.</u>

27.     Victim J. T., and elderly individual residing in Galveston County, Texas within the Southern District of Texas, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as "being with the Government" and told the victim

that significant fraudulent activity had been detected on several accounts in her name. Using fraudulent pretenses, representations, promises and inherent threats of legal consequences J.T. was convinced to withdraw her money and convert it to gold. The gold was picked up by Courier **Smitaben Thakor**, who was assisted by **Samirali Ghabrani**, at the direction of Mediator "Vikram" aka "Varun". After the pickup, the two Couriers delivered the gold to **Iqbal Lakhani** – a Collector for the conspiracy. **Iqbal Lakhani** and **Mudassir Lakhani,** another Collector for the conspiracy then made arrangements for the fraudulently obtained funds to be shipped out of the county.

<u>The scheme targeting L.F., O.S., L.F. and A.R., and the international transfer of fraud</u>

<u>proceeds through Zo Frost and Co. Custom Jewelry</u>

28. Between on or about August 8, 2025, and September 15, 2025, Victims L.F., O.S., L.F. and A.R. all elderly individuals residing within the Southern District of Texas, were independently targeted by the Indian call centers with the fraud scheme. Using fraudulent pretenses, representations, promises and inherent threats of legal consequences, each victim was convinced to withdraw money and convert it to gold. In three of the four instances, the gold was picked up by the Courier **Smitaben Thakor** at the direction of Mediator "Vikram" aka "Varun". In all four cases, the gold was then delivered to the Collectors **Iqbal Lakhani** and **Mudassir Lakhani** who then provided the gold to **Zohaib Muhmmad** and **Samir Ali.** Through their business: Zo Frost and Co. Custom Jewelry, they shipped the gold out of the United States, and purposely mislabeled

and falsified shipping documents, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the fraud scheme.

## The scheme is not limited to the specific instances described

29.     On many other occasions **Defendants** listed in this indictment have acted as couriers, mediators, collectors and participants in the laundering network; or coordinated other couriers, mediators, collectors and participants in the laundering network for the fraud scheme, targeting several other victims not specifically listed in this indictment.

In violation of 18 U.S.C. § 1349.

## Count Two

Violation:  18 U.S.C. § 1956(h)
(Conspiracy to Commit Money
Laundering)

1.     The General Allegations and all allegations described under Count One of this indictment is realleged and incorporated by reference as though fully set forth herein.

2.     From on or about from on or about February 1, 2025, and continuing through on or about February 4, 2026, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere,

**SUSHIL MANOJKUMAR PATEL (1)
DEVANSH JIGNESH BHAVSAR (2)
AKSHAI LOKRAY (3)
NAREN KUKKAPALLI (4)
MUTHUKRISHNAN PALRAJ (5)
RAVI CHANDA REDDY AMANAGANTI (6)
█████████████████████ (7)
SHABBIR ALI MOHAMMED (8)
VENKATAPAVAN PACHCHAVA (9)**

**Fourth Superseding Indictment – Page 19**

**JAY SURESHKUMAR RAKHOLIYA (10)**
**NAGA RAJU TEEGALA (11)**
**PRUTHWIK GOUD GALLIPALLY (12)**
**SHBHAM PATEL (13)**
██████████████ (14)
**HARISH CHARY VADLA (15)**
██████████████ (16)
**SMITABEN THAKOR (17)**
**SAMIRALI GHABRANI (18)**
**IQBAL LAKHANI (19)**
**MUDASSIR LAKHANI (20)**
**ZOHAIB MUHMMAD (21)**
**SAMIR ALI (22)**

did, along with others known and unknown to the Grand Jury, knowingly combine,

conspire, and agree to commit offenses against the United States in violation of 18 U.S.C.

§§ 1956 and 1957, that is:

| | |
|---|---|
| FINANCIAL TRANSACTIONS in violation of 18 U.S.C. § 1956(a)(1)(B)(i): | to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, **wire fraud** (18 U.S.C. § 1343), knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property |

|  | involved in the financial transactions represented the proceeds of some form of unlawful activity; |
|---|---|
| INTERNATIONAL PLACEMENT in violation of 18 U.S.C. § 1956(a)(2)(B)(i): | to knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer funds from a place in the United States to a place outside the United States, knowing that the funds involved in the financial transactions represented the proceeds of some form of unlawful activity and knowing that such transportation was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, that is, **wire fraud** (18 U.S.C. § 1343),; and |
| MONETARY TRANSACTIONS in violation of 18 U.S.C. § 1957 | to knowingly engage and attempt to engage, in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, and such property having been derived from a specified unlawful activity, that is, **wire fraud** (18 U.S.C. § 1343). |

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
Pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), and 28 U.S.C. § 2461(c)

As the result of committing one or more of the foregoing offenses alleged in this indictment, the defendants herein shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), and 28 U.S.C. § 2461(c):

1. any property constituting, or derived from, and proceeds the defendants obtained, directly or indirectly, as the result of such violations;

2. any of the defendants' property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violations, and/or;

3. the property, which is subject to forfeiture, includes but is not limited to the following:

**U.S. Currency:**

- $2,963,286.39 seized from Wells Fargo Bank Account No. 5745263573
- $19,311 cash currency seized from Devansh Bhavsar

**Personal Property:**

- One Omega Watch seized from Devansh Bhavsar
- One Hermes Apple iWatch seized from Devansh Bhavsar
- One gold Cartier bracelet seized from Devansh Bhavsar

**Cash Proceeds:**

A sum of money equal to $27,017,247.20 in United States currency and all interest and proceeds traceable thereto, representing the amount of proceeds obtained by the defendants as a result of the offenses alleged in this indictment, for which the defendant is personally liable.

**Substitute Assets**

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with a third person;

    (c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property, including but not limited to all property, both real and personal owned by the defendants.

By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), and 28 U.S.C. § 2461(c):

A TRUE BILL

_____
GRAND JURY FOREPERSON

JAY R. COMBS
UNITED STATES ATTORNEY

_____          ___4/15/26_____
EMIL MELCHIOR MIKKELSEN          Date
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| SUSHIL MANOJKUMAR PATEL (01) | § | |
| DEVANSH JIGNESH BHAVSAR (02) | § | |
| AKSHAI LOKRAY (03) | § | |
| NAREN KUKKAPALLI (04) | § | |
| MUTHUKRISHNAN PALRAJ (05) | § | |
| RAVI CHANDA REDDY AMANAGANTI (06) | § | |
| ▉▉▉▉▉▉▉▉▉▉▉▉ | § | |
| SHABBIR ALI MOHAMMED (08) | § | |
| VENKATAPAVAN PACHCHAVA (09) | § | Case No. 6:25-CR-118 |
| JAY SURESHKUMAR RAKHOLIYA (10) | § | JUDGES BARKER / LOVE |
| NAGA RAJU TEEGALA (11) | § | SEALED |
| PRUTHWIK GOUD GALLIPALLY (12) | § | |
| SHUBHAM PATEL (13) | § | |
| ▉▉▉▉▉▉▉▉▉▉▉▉ | | |
| HARISH CHARY VADLA (15) | § | |
| ▉▉▉▉▉▉▉▉▉▉▉▉ | | |
| SMITABEN THAKOR (17) | § | |
| SAMIRALI GHABRANI (18) | § | |
| IQBAL LAKHANI (19) | § | |
| MUDASSIR LAKHANI (20) | § | |
| ZOHAIB MUHAMMAD (21) | § | |
| SAMIR ALI (22) | § | |

## NOTICE OF PENALTY

### Count One

VIOLATION:     18 U.S.C. § 1349 (conspiracy to commit wire fraud)

PENALTY:     Imprisonment of not more than twenty (20) years; the
greater of a fine not to exceed $250,000 or two times the
gross gain to the Defendant, or two times the loss to the

Fourth Superseding Indictment – Page 24

victim, or both such imprisonment and fine; and a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT: $100.00

## **Count Two**

VIOLATION: 18 U.S.C. § 1956(h)
Conspiracy to Commit Money Laundering

PENALTY: Imprisonment of not more than twenty (20) years; the greater of a fine not to exceed $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, or both such imprisonment and fine; and a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT: $100.00